IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KEITH R. CROSBY                                                                                    PLAINTIFF

v.                                         Case No. 3:11-CV-03084

EATON CORPORATION                                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Keith R. Crosby brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging Defendant Eaton Corporation wrongly denied his claim for long term disability benefits. Before the Court are the Administrative Record (cited as "AR-#"), Plaintiff's Brief (Doc. 13), and Defendant's Brief (Doc. 16). For the reasons stated herein, the Court finds that Defendant's decision to deny benefits is AFFIRMED, Plaintiff's claim is DENIED, and this case is DISMISSED with prejudice.

**I. Background**

Plaintiff was a full-time Production Operator in Defendant's Mountain Home, Arkansas, shipping and handling division for approximately three years, beginning on April 12, 2004 and continuing until April 4, 2007. He suffered a back injury on the job on April 24, 2005 when he became pinned against the wall of a freight elevator by a load of metal material. He subsequently sought medical care for the injury but did not stop working full-time until two years after the injury occurred.

On April 26, 2005, two days after Plaintiff's back injury, he visited his primary care physician, Dr. Richard Burnett. Dr. Burnett noted muscle spasms and pain in Plaintiff's lumbar spine and prescribed various anti-inflammatory and pain medications, including Medrol, Flexeril,

Lortab, and Darvocet. (Exh. A to Plaintiff's Brief, Doc. 13-1, p. 1). Dr. Burnett instructed Plaintiff to refrain from lifting items weighing over 10 pounds, bending, or stooping.[1]

Dr. Burnett examined Plaintiff again on May 3, 2005. During that visit, Plaintiff reported that his back was feeling better, but his neck was still sore. Dr. Burnett noted that Plaintiff had full range of motion and no tenderness. Following this appointment, Plaintiff went back to work full-time.

On May 21, 2005, Plaintiff visited the emergency room of Baxter County Regional Medical Center, complaining of back pain radiating down his right leg. The emergency room physician, Dr. Philip Sadler, diagnosed acute low back pain and administered injections of the drugs Toradol and Norflex to combat Plaintiff's inflammation and pain. Shortly thereafter, Plaintiff's primary care physician, Dr. Burnett, ordered that Plaintiff undergo an MRI, which was performed on May 27, 2005. The MRI revealed "[a] small right paracentral disc herniation at L3-L4, extending superiorly . . . [a] broad-based disc bulge in the right lateral space at L3-L4 . . . [and] [d]egenerative disc changes as well at L4-L5 and L5-S1." *Id.* at p. 6.

For approximately two years following the May 2005 MRI, there is no record of Plaintiff visiting any doctors or taking prescription medications. During this two-year period, Plaintiff continued to work full-time for Defendant as Production Operator.

Plaintiff began receiving medical treatment for back pain again in early 2007 and quit working on April 4, 2007. On April 27, 2007, Plaintiff consulted with Dr. Thomas Briggs of the

---

[1] Plaintiff's job description required lifting and carrying up to 10 pounds frequently, up to 50 pounds occasionally, and up to 100 pounds seldom; pushing, pulling, and reaching frequently; overhead work seldom; sitting one hour per day; and standing and walking eight hours per day. (AR-00308).

Springfield Neurological and Spine Institute. Dr. Briggs diagnosed "[l]ow back pain, secondary to facet pain and disc setting . . . ." (AR-00121). On May 3, 2007, Plaintiff consulted with Dr. Ted Lennard, also of the Springfield Neurological and Spine Institute, who analyzed the results of a March 12, 2007 MRI and diagnosed Plaintiff with a "mild stenosis at L2-3 and L3-4," "[l]umbar discogenic pain," and "[l]eft foot plantar fasciitis." (AR-00122-25). Dr. Lennard prescribed physical therapy.

By June 29, 2007, Plaintiff was reporting "increased pain in the low back mainly at the midline and off to the right" for which he received epidural injections. (AR-00129-30). Dr. Lennard then ordered lumbar facet injections on July 16, 2007, and noted that Plaintiff "continue[d] to experience low back pain as before." (AR-00131). Dr. Lennard reported Plaintiff was "no better" as of his follow-up visit on August 22, 2007. (AR-00134).

On October 8, 2007, Plaintiff began receiving disability benefits through Defendant's Long Term Disability Plan ("Plan"). The Plan provided that disability benefits were available for up to a 24-month period for any participating employee who was "totally and continuously unable to perform the essential duties of [his] regular position with the Company, or the duties of any suitable alternative position with the Company." (AR-00033). Benefits would only continue after this initial 24-month period if an employee could establish that he was "totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which [he is], or may become, reasonably well fit by reason of education, training or experience—at Eaton or elsewhere." *Id.*

On December 20, 2007, Plaintiff elected to have L4-5/L5-S1 fusion surgery. After the surgery, Plaintiff reported to Dr. Briggs on February 6, 2008 with "[a] lot of tenderness in the muscle

attachments to the left iliac crest." (AR-00136). Dr. Briggs noted the incision was "well healed" with "[n]o evidence of complications." *Id.* Plaintiff then underwent physical therapy but still reported pain in the lumbar spine. Doctors ordered a CT scan on March 31, 2008, which revealed "no apparent postoperative fluid collection or mass." (AR-00137). Plaintiff's lumbar spine was normally aligned with a "moderate concentric disc bulge at L1-L2 without significant spinal or foraminal stenosis" and "a mild concentric disc bulge at L2-L3 and L3-L4, also without signficant spinal foraminal stenosis." *Id.* The CT scan further revealed "no apparent disc herniation, epidural or paraspinous mass." *Id.* The fused area appeared "fairly well fixed and nonmobile," while the remainder of the lumbar spine showed "fairly good motion with flexion and extension" and "[f]airly good mobility." (AR-00139).

On July 14, 2008, at Defendant's request, Dr. Lennard completed a Physical Capacities Evaluation on Plaintiff. In the evaluation, Dr. Lennard opined that the prognosis for Plaintiff's gainful employment was "fair" and concluded that Plaintiff could speak for eight hours per day, view a computer screen for four hours per day, sit for two hours per day, stand for one hour per day, and walk for one hour per day. (AR-00146). Dr. Lennard restricted Plaintiff's bending and lifting activities and recommended "a sedentary or light duty job . . . ." (AR-00147).

On September 8, 2008, Plaintiff had a follow-up visit with Dr. Lennard that the doctor summarized as follows:

> Keith says he is better. His medications have been changed by Dr. Burnett that have included a Duragesic patch, xanax, hydrocodone and prozac. He continues to attend PT 1x/week and finds this helpful. He is performing exercises independently as well. He has mild residual low back pain and stiffness. He rarely has any lower extremity pain, numbness, or tingling . . . Keith has made satisfactory progress in his overall condition. Continue PT over the next 1 month (1x/week) for education on lumbar exercises, then home exercise program independently.

(AR-000149-50).

Dr. Lennard filled out a second Physical Capacities Evaluation for Plaintiff on September 9, 2008. This evaluation was not materially different from Dr. Lennard's July 14, 2008 evaluation and noted the same work restrictions and prognosis for Plaintiff's recovery. (AR-00151).

Dr. Burnett provided Defendant with a medical status update on Plaintiff on March 18, 2009, restricting from lifting, bending, stooping, kneeling, or engaging in prolonged standing or sitting. (AR-00161). Dr. Burnett further indicated that Plaintiff's prognosis for return to gainful employment was "poor" but did not specify if his comment referred to Plaintiff's own job with Defendant or to any occupation for which Plaintiff may be qualified. (AR-00162).

On May 11, 2009, Plaintiff underwent a Functional Capacity Evaluation ("FCE") performed by Physical Therapy Specialists Clinic, Inc. (AR-00164-71). The FCE concluded that Plaintiff had physical restrictions but could return to work in light capacity employment. (AR-00171). A physician retained by Defendant named Dr. Robert D. Petrie reviewed the FCE on May 21, 2009 and pronounced the findings "valid," agreeing that "it is clear that [Plaintiff] is capable of functioning at light category of employment" on a full-time basis. (AR-00172-3).

On June 29, 2009, Defendant informed Plaintiff by letter that he was no longer eligible to receive further disability benefits. (AR-00090). The Claims Administrator had determined that according to the objective evidence in Plaintiff's medical file, Plaintiff was not totally disabled and could return to sedentary and/or light duty work.

After Plaintiff's claim was denied, he requested that Defendant conduct a review of the denial determination. (AR-00098). On January 28, 2010, Dr. Richard A. Silver performed an independent medical review of the file and found that the documentation provided by Plaintiff's treating

physicians, Drs. Burnett and Lennard, along with the FCE, supported a determination that Plaintiff was not totally disabled and that Plaintiff's subjective complaints were not substantiated by objective clinical findings. Specifically, Dr. Silver opined that Plaintiff "can perform sedentary and/or light work" and "is not disabled orthopedically." (AR-00196). Further, Dr. Silver reported that Plaintiff "does not have any documentation of loss of range of motion of any clinical significance of the cervical, thoracic, or the lumbosacral spine" nor "any focal neurological deficits in the upper or lower extremities." (AR-00197). As for Plaintiff's subjective complaints of pain, Dr. Silver found that these "would not have impacted the employee's ability to function in any occupation, specifically sedentary and/or light work per the FCE." *Id.*

Shortly before Dr. Silver's review of the paper file, Plaintiff sought the opinion of another physician, Dr. Adam Wozniak. Plaintiff saw Dr. Wozniak thirteen times between December 16, 2009 and September 9, 2010. Dr. Wozniak's medical reports, which were the most recent reports submitted by a treating physician of Plaintiff's, documented Plaintiff's complaints of "sciatica pain" and "moderate pain discomfort." (AR-00190). However, Dr. Wozniak also described Plaintiff's gait and stance as "normal" and determined that Plaintiff was "[i]n no acute distress." (AR-00192).

By letter dated February 3, 2010, Defendant informed Plaintiff that its decision to deny further disability benefits was upheld. (AR-00106). Plaintiff again appealed this determination, and on August 23, 2010, a board-certified orthopedic surgeon from the Medical Review Institute of America provided Defendant with an independent medical review report of Plaintiff's medical file. The reviewing physician, whose identity was never identified in the report, found that Plaintiff's medical condition did not prevent him from being gainfully employed in any capacity. (AR-00220-22). After receiving the independent medical review report, Defendant sent a letter to Plaintiff dated

August 26, 2010, informing him that more time was needed to review the denial of benefits.

On September 27, 2010, Defendant hired a second, again unnamed, physician from the Medical Review Institute of America to conduct another review of Plaintiff's medical file. This second reviewing physician noted that as part of the review process, he had consulted with Plaintiff's treating physician, Dr. Wozniak, on September 22, 2010. The reviewing physician determined that Plaintiff "was not disabled from performing any occupation from 7-01-09 to present" since his condition "may cause limited mobility or chronic pain requiring chronic medication, but would not preclude Light or Very Light/Sedentary occupations." (AR-00218). Further, the reviewing physician stated in his report that Dr. Wozniak believed Plaintiff could possibly perform clerical work as a means of employment. (AR-00214).

By letter dated October 5, 2010, Plaintiff's final appeal for benefits was denied. (AR-00052). Having exhausted his administrative remedies, Plaintiff filed the instant Complaint seeking review of Defendant's decision.

## II. Standard of Review

Generally, once a plaintiff has exhausted his administrative remedies, the court's function is to conduct a review of the record that was before the administrator of the plan when the claim was denied. *Farfalla v. Mutual of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A denial of benefits claim under ERISA is reviewed for an abuse of discretion when "a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations." *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 1997) (en banc) (citing *Firestone*, 489 U.S. at 111). When a plan confers discretionary authority, then the Court must defer to the determination made by the

administrator or fiduciary unless such determination is arbitrary and capricious. *Firestone*, 489 U.S. 115. "[R]eview for an 'abuse of discretion' or for being 'arbitrary and capricious' is a distinction without a difference" because the terms are generally interchangeable. *Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d 696, 701 (8th Cir. 2008), citing *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 946 n.4 (8th Cir. 2000).

Abuse of discretion is the proper standard of review in the case at bar. Under the terms of the Plan, Defendant as Plan Administrator had complete discretionary authority to determine eligibility for benefits and could delegate its claims administration process to a third party if it so chose. (AR-00009). It appears that Defendant delegated the day-to-day administration of its Plan to its Claims Administrator, Sedgwick CMS, but retained ultimate discretionary authority to approve or deny any of the Claims Administrator's recommendations regarding eligibility for disability benefits.

The law is clear that the decision of a plan administrator may only be overturned if it is not "reasonable, i.e., supported by substantial evidence." *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996). An administrator's decision will be deemed reasonable if "a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Id.* If a decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made. *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, (8th Cir. 1997), citing *Donaho*, 74 F.3d at 899.

Furthermore, "an ERISA plan administrator or fiduciary generally is not bound by [a Social Security Administration] determination that a plan participant is disabled." *Jackson v. Metro Life Ins. Co.*, 303 F.3d 884, 889 (8th Cir. 2002). Here, Plaintiff was awarded Social Security disability

benefits; however, Defendant was not obligated under law to take the Social Security Administration's decision into account when deciding whether to award benefits pursuant to the provisions of the Plan. *Jackson*, 303 F.3d at 889 (discussing why determinations of the Social Security Administration are not binding on a plan fiduciary, pursuant to ERISA). Accordingly, it was not an abuse of discretion for Defendant to have come to a different conclusion regarding disability benefits than the Social Security Administration.

The Court's task is to analyze whether Defendant's decision to deny benefits to Plaintiff should be overturned. In considering this question, the Court must examine the basis behind Defendant's denial and determine if the decision was supported by substantial evidence. This evidence should be assessed by its quantity and quality, and this review, "though deferential, is not tantamount to rubber-stamping the result." *Torres v. Unum Life Ins. Co. of Am.*, 405 F.3d 670, 680 (8th Cir. 2005).

There are five factors the Court will consider to determine whether Defendant's decision was reasonable:

> (1) whether the administrator's interpretation is consistent with the goals of the Plan;
> (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent;
> (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute;
> (4) whether the administrator interpreted the relevant terms consistently; and
> (5) whether the interpretation is contrary to the clear language of the Plan.

*Id.* (citing *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 643 (8th Cir. 2002)).

In addition to weighing these five factors, the Court must take into account Defendant's potential conflict of interest, as Defendant retains the authority to determine whether an enrollee is eligible for benefits and is responsible for paying benefits out of its own pocket. Plaintiff contends

the conflict of interest should be considered as a factor in determining whether there was an abuse of discretion. The Supreme Court has stated that a reviewing court is to give importance to this conflict of interest depending upon how closely the other factors are balanced. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2351 (2008). Accordingly, the Court will review the denial of benefits for abuse of discretion, taking into account relevant factors including a potential conflict of interest.

**III. Discussion**

Pursuant to the Eighth Circuit's holding in *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d at 643, the first factor the Court must consider in evaluating the reasonableness of Defendant's denial of ERISA benefits is whether Defendant's interpretation of the Plan is consistent with the goals of the Plan. The Plan's goal, as stated in the "Program Overview" section, is to create "long term disability options that provide a continued source of income if you are sick or injured and cannot work for an extended period of time." (AR-00026). The Plan's definition of "a covered disability . . . as a result of an occupational or non-occupational illness or injury" is as follows:

- During the first 24 months, including any period of short term disability, you are totally and continuously unable to perform the essential duties of your regular position with the Company, or the duties of any suitable alternative position with the Company; and

- Following the first 24 months, you are totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience—at Eaton or elsewhere.

(AR-00033).

Considering the Plan's goal of providing disability benefits to qualifying employees as defined in the Plan, the medical data present in the administrative record—to include the specific recommendations of two of Plaintiff's treating physicians, Drs. Lennard and Wozniak, and the

opinions of Drs. Petrie, Silver, and others doctors employed by the Medical Review Institute of America—clearly supports Defendant's conclusion that Plaintiff did not meet the eligibility requirements for long term disability. Plaintiff initially received disability benefits when he provided medical evidence to show he was unable to perform the essential duties of his regular position with Defendant. Following Plaintiff's first 24 months of disability, however, the criteria for eligibility under the Plan changed. Plaintiff was then required to prove through objective evidence that he was unable to perform *any work* for compensation or profit. The administrative record supports Defendant's reasonable conclusion that Plaintiff was capable of at least sedentary and/or light duty work and was not totally disabled. Therefore, under the Plan's terms, Plaintiff did not qualify for continuing disability benefits.

      There is no dispute that Plaintiff was injured on the job and appears to suffer from chronic back pain as a result of the injury and perhaps also as a result of corrective back surgery. Nevertheless, under the terms of the Plan, a participant's total disability cannot be substantiated solely through his subjective complaints of pain. Instead, the Plan requires that the disability be substantiated through objective findings, which "are those that can be observed by your physician through objective means, not just from your description of the symptoms." (AR-00039). Accordingly, the first *Shelton* factor weighs in favor of Defendant, as the Court concludes that Defendant's decision to deny Plaintiff disability benefits was not contrary to the goals of the Plan and was, in fact, reasonable and supported by the objective evidence, including the findings of Plaintiff's treating physicians.

      The second factor in evaluating Defendant's denial of benefits is whether Defendant's interpretation of the Plan rendered any language in the Plan meaningless or internally inconsistent.

*Shelton*, 285 F.3d at 643. Since the Plan specifically denies continuing benefits to a claimant who is not shown to be, through objective evidence, totally disabled, Defendant's decision to deny benefits to Plaintiff based on the objective evidence in the file was a reasonable interpretation of the Plan's terms.

The remaining three of the five factors announced in *Shelton* are: (1) whether the administrator's decision to deny benefits conflicts with the substantive or procedural requirements of the ERISA statute; (2) whether the administrator interpreted the relevant terms at issue consistently; and (3) whether the administrator's interpretation is contrary to the clear language of the Plan. In considering these factors, the Court finds that Defendant acted carefully, reasonably, and appropriately in evaluating Plaintiff's claim in light of the Plan's terms. Plaintiff was afforded a full and fair review of both the denial of his claim and the appeal of that denial. Defendant relied not only on the opinions of its own reviewing physicians but also on the opinions of Plaintiff's own physicians. In addition, Defendant's decision was supported by a Transitional Skills Analysis and Labor Market Survey which, taking into account Plaintiff's medical restrictions, education, work history, and other factors, identified other sedentary or light-duty jobs that Plaintiff could perform. *See* AR-00091. Specifically, the Transitional Skills Analysis conducted by Defendant on May 21, 2009 revealed that other jobs including that of customer order clerk, information clerk, and security guard, were potentially available to Plaintiff. In addition, the Labor Market Survey identified two employers within a 50 mile radius that could potentially provide employment to Plaintiff in keeping with his physical restrictions. Accordingly, Defendant's decision to deny benefits was made after careful review, while comporting with ERISA and the clear language of the Plan.

Finally, there is no evidence in the record to indicate that a conflict of interest influenced

Defendant's decision. Although a plan administrator is not required to accord special deference to the opinions of treating physicians over physicians who review the paper file, it appears that here at least two of Plaintiff's treating physicians were unable to pronounce him totally disabled and indeed found him capable of performing sedentary or light duty jobs. To the extent Plaintiff's other treating physicians disagreed with this determination, Defendant was not required to give their opinions greater weight. *See Midgett v. Wash. Group Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) (treating physicians not automatically entitled to special weight in disability determinations under ERISA) (citing *Black & Decker Disability Plan v. Nord*, 538, U.S. 822, 834 (2003)). Accordingly, in light of the record before the Court, all five *Shelton* factors weigh in Defendant's favor.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's decision to deny benefits is AFFIRMED, Plaintiff's claim is DENIED, and this case is DISMISSED with prejudice. An order of judgment shall be filed contemporaneously herewith, with all parties instructed to bear their own fees and costs.

IT IS SO ORDERED this 19th day of April, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE